IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01991–REB–KMT

JACQUELINE L. DEGARMO, and
ALISIA E. BLYTHE,

    Plaintiffs,

v.

MICHAEL YORTY, both in his individual capacity and as a Glenwood Police Officer, and
CITY OF GLENWOOD SPRINGS, as the city of Glenwood Spring Co.,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants' "Motion for Summary Judgment Asserting Qualified Immunity" (Doc. No. 27 [Mot.], filed December 16, 2011). Plaintiffs filed their Response on January 27, 2012[1] (Doc. No. 35 [Resp.]), and Defendants filed their Reply on January 25, 2012 (Doc. No. 33 [Reply]). The motion is ripe for recommendation and ruling.

## STATEMENT OF THE CASE

Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983, alleging Defendants violated their constitutional rights and also violated several criminal statutes. (*See* Doc. No. 10 at 4.)

---

[1] Plaintiffs' Response was filed untimely after Defendants filed their Reply. Plaintiffs failed to submit any evidence with their Response. Instead, their Response is almost entirely devoted to explaining why their Response was late. Plaintiffs did not ask for an extension to submit further briefing or evidence in support of their claims.

Plaintiffs allege that on August 9, 2009, Plaintiff DeGarmo unknowingly paid for her and her daughter's (Plaintiff Blythe's) entry in the Glenwood Hot Springs Pool with a counterfeit twenty dollar bill. (*See id.* At 7–8.) Later, upon a request by a pool staff member, Plaintiffs went to the pool office, where they were confronted by Defendant Officer Yorty, a Glenwood Springs Police Officer. (*See id.* at 8.) Plaintiffs allege that Defendant Yorty subjected Plaintiff DeGarmo to a custodial interrogation without giving her a *Miranda*[2] advisement, and that Defendant Yorty falsely arrested Plaintiff DeGarmo on felony charges of forgery and theft without probable cause and then booked her into the Garfield County Jail where she was detained for approximately six and one-half hours. (*See id.* at 6, 10–13, 20.) Plaintiffs allege that jail staff and Defendant Yorty made intimidating comments to them during Plaintiff DeGarmo's detention, and that Plaintiff DeGarmo was not offered food, a proper restroom, adequate shelter, sanitary apparel or medical treatment. (*See id.* at 12–14.) Plaintiff DeGarmo states she has suffered a loss of enjoyment of life, emotional distress, and post-traumatic stress disorder caused by her arrest. (*See id.* at 24, ¶¶ 12a–e.) Plaintiff DeGarmo also alleges she sought medical care for physical injuries she received during her arrest. (*See id.* at 24, ¶ 12g.) Plaintiff asserts claims under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments seeking money damages. (*See id.* at 4–6, 25–27.)

**LEGAL STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

2

56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Defendants argue Defendant Yorty is entitled to qualified immunity. (Mot. at 6–18.) Defendants also argue the municipal liability claim should be dismissed because Plaintiffs are unable to show any constitutional violation committed by Defendant Yorty. (*Id.* at 18.)

### I. *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001). To overcome a claim of qualified immunity, a plaintiff must clear two considerable hurdles. She must show that (1) the defendant violated her federally protected rights, and (2) the infringed rights at issue were clearly established in the law at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Ashcroft*

*v. al-Kidd*, ––– U.S. –––, 131 S. Ct. 2074, 2080, 2083 (2011) (quotation omitted). The Supreme Court has held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The practical effect of *Pearson*'s directive on the qualified-immunity analysis is that for a plaintiff to prevail, both prongs must be adequately established; however, for a defendant to prevail, inadequacy with respect to either prong will suffice. *See Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010).

### A.     *Claims Asserted by Plaintiff Blythe*

To the extent Plaintiff Blythe asserts Section 1983 claims on her own behalf for denial of her mother's constitutional rights, a civil rights action "must be based on the violation of [a] plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Plaintiffs have not alleged that the defendants' alleged conduct was directed at Plaintiff Blythe. Thus, the defendants are entitled to summary judgment on all of the constitutional claims asserted by Plaintiff Blythe. *See Kelly v. Rockefeller*, 69 F. App'x 414, 416 (10th Cir. 2003) (plaintiff lacked standing to bring mother's civil rights claims).

### B.     *Plaintiff DeGarmo's Fourth Amendment Claims*

Plaintiff DeGarmo alleges that Defendant Yorty violated the Fourth Amendment's prohibition against illegal search and seizure. (Doc. No. 10 at 5, ¶ 1.) Plaintiff also alleges that Defendant Yorty's actions "constituted False arrest." (*Id.*)

### *1.     Strip Search*

Plaintiff DeGarmo alleges "she was bodily searched, and her breasts were touched by Jane Doe Number 1, (Possible Hispanic female 25-45 years old, shorter, heavier set build, working August 9, until 5 PM)." (Doc. No. 10 at 14.) Plaintiff DeGarmo further alleges she was forced by Jane Doe to disrobe entirely and forced to wear unsanitary jail apparel without underwear. (*Id.*)

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). In other words, "for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams,* 465 F.3d 1210, 1227 (10th Cir. 2006).

Plaintiff DeGarmo fails to allege or submit any evidence that Defendant Yorty played any role in the search, ordered the search, supervised the search, or had any responsibility for supervising the search. Thus, Defendant Yorty is entitled to summary judgment on Plaintiff DeGarmo's claims related to the strip search.

### *2.     Search of Wallet*

To the extent Plaintiff DeGarmo asserts a claim that Defendant Yorty unlawfully searched her wallet, Defendants move for summary judgment. (Doc. No. 10 at 11.) "[A] Fourth Amendment violation occurs when police engage in a warrantless search and no exception to the warrant requirement applies, or when police search pursuant to a warrant not based on probable cause." *Specht v. Jensen*, 832 F. 2d 1516 (10th Cir. 1987). However, " ' one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.' " *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "Valid consent is that which is freely and voluntarily given." *Pena*, 143 F.3d at 1366 (citations and quotations omitted). "Whether a defendant freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances." 143 F.3d at 1366 (citing *United States v. Santurio*, 29 F.3d 550, 552 (10th Cir. 1994)).

In her Complaint, Plaintiff DeGarmo states that Defendant Yorty's made a false statement in his report wherein he stated he asked her to see the other money in her wallet and envelope. (Doc. No. 10 at 11.) Plaintiff explains that Defendant Yorty never asked to see the money. Rather, Plaintiff states, "[i]n trying to explain our innocence, Ms. DeGarmo showed Officer Yorty her money in her wallet and envelope . . . . Ms. DeGarmo volunteered the showing of her money." (*Id.* at 10–11.) Thus, because Plaintiff admits that she consented to the search, and because she has not made any argument or submitted any evidence to the contrary,

there is no genuine issue of material fact with respect to this claim, and summary judgment is appropriate in favor of Defendant Yorty.

### 3. *False Arrest*

"A warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense."[3] *Tanberg v. Sholtis*, 401 F.3d 1151, 1159 (10th Cir. 2005) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001)). "Probable cause exists to arrest if 'facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.' " *Tanberg*, 401 F.3d at 1159 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)). The Tenth Circuit has held that, for purposes of qualified immunity:

> When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Romero*, 45 F.3d at 1476 (citations and quotations omitted). "Probable cause must be evaluated in relation to the circumstances as they would have appeared to prudent, cautious and trained police officers." *United States v. McCormick*, 468 F.2d 68, 73 (10th Cir. 1972) (citing *Trusty v. State of Okla.*, 360 F.2d 173 (10th Cir. 1966)); *Murray v. United States*, 351 F.2d 330 (10th Cir. 1965)).

---

[3] Plaintiff's false arrest claims are analyzed under the Fourth Amendment, and not the Fourteenth Amendment.

In support of their Motion for Summary Judgment, Defendants submit the Affidavit of Defendant Yorty. (Mot., Ex. A.) Defendant Yorty states on his arrival at the Glenwood Hot Springs Pool on August 9, 2009, he met with the pool manager and cashier. (*Id.*, ¶ 3.) The cashier told Defendant Yorty that earlier that morning a female customer presented her with a counterfeit twenty dollar bill to pay the pool entry fee. (*Id.*, ¶ 4.) When the cashier advised the customer that she did not know if she could take the counterfeit money, the customer advised that she only had two twenty dollar bills. (*Id.*) In her Complaint, Plaintiff DeGarmo concedes "[t]he cashier seemed to examine the $20.00 bill which appeared worn . . . ." (*Id.* at 8.)

In his Affidavit, Defendant Yorty states the cashier took the counterfeit bill, along with what she thought was a legitimate twenty dollar bill, and allowed the Plaintiff DeGarmo to proceed into the pool. (Mot., Ex. A, ¶ 4.) The pool manager later then inspected the twenty dollar bill and also believed the bill looked suspicious. (*Id.*) Upon inspection of the bill, Defendant Yorty also observed "it was obviously a counterfeit bill as the writing and numbers on it were smeared, it had uneven cuts, and the white paper the bill was printed on was still visible on one edge." (*Id.*, ¶ 7.)

When Defendant Yorty confronted Plaintiff DeGarmo, who was identified by the pool cashier and manager as the customer who used the bill, Plaintiff DeGarmo told Defendant Yorty that she had found the bill in her rose bushes and did not know it was counterfeit. (*Id.*, ¶ 6.) In her Complaint, Plaintiff DeGarmo concedes she paid part of her admission fee with a twenty dollar bill her daughter had found in a rose bush in front of Plaintiff DeGarmo's home. (Doc. No. 10 at 7–8.) According to Defendant Yorty, Plaintiff DeGarmo also opened up her wallet and

9

an envelope to show Defendant Yorty other bills, none of which looked suspicious to him. (Mot., Ex. A, ¶ 9.) Defendant Yorty states he believed Plaintiff DeGarmo's explanation of how she found the counterfeit bill was suspicious at a minimum. (*Id.*, ¶ 8.) Defendant Yorty determined there was probable cause to arrest Plaintiff DeGarmo. (*Id.*, ¶ 10.) Later testing confirmed the bill was counterfeit. (Mot., Ex. A, ¶ 14.)

Plaintiff does not dispute that she "used the twenty dollar bill to get in the pool." (Resp. at 5.) Rather Plaintiff argues only that she did not know the bill was counterfeit. (*Id.*) However, probable cause "does not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Moreover, the Tenth Circuit has noted that "[i]n counterfeit note cases, '[a]ll of the . . . circuits to have answered th[e] question . . . have found that the passing of a counterfeit note coupled with an identification of the person who passed the note furnishes probable cause to arrest the individual identified as passing the note." *Painter v. The City of Albuquerque*, 383 F. App'x 795, 800-01 (10th Cir. 2010) (quoting *Rodis v. City & Cnty. of San Francisco*, 558 F.3d 964, 970 (9th Cir.2009) (collecting cases) (alterations in original). Here, Defendant Yorty relied on the pool manager's and the cashier's identification of Plaintiff DeGarmo as the customer who used the counterfeit bill to gain admission to the pool. These facts are sufficient for an objectively reasonable officer to think that Plaintiff DeGarmo had committed the acts of forgery and theft and thus to arrest her for committing those acts. *See Romero*, 45 F.3d at 1476; *Tanberg*, 401 F.3d at 1159. As such, Defendant Yorty is entitled to summary judgment on Plaintiff's False Arrest claim.

### C. *Plaintiff DeGarmo's Fifth Amendment Claims*

Plaintiff claims Defendant Yorty violated her Fifth Amendment rights by conducting a custodial interrogation without giving her a *Miranda* warning. (Doc. No. 10 at 10.) "[A] violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003). Here, it is undisputed that the criminal charges against Plaintiff DeGarmo were dismissed pursuant to the State's *Nolle Prosequi* motion (*see* Mot. Ex. B), and any statements made by Plaintiff DeGarmo were not admitted against her in a criminal case. Thus, her Fifth Amendment claim fails as a matter of law. *See Eidson v. Owens*, 515 F.3d 1139, 1149 (10th Cir. 2008); *Strepka v. Sailors*, 494 F. Supp. 2d 1209, 1228 (D. Colo. 2007). Defendant Yorty is entitled to summary judgment on Plaintiff's Fifth Amendment claim.

### D. *Plaintiff DeGarmo's Due Process Claims*

To the extent Plaintiff DeGarmo asserts claims that Defendant Yorty violated Plaintiff's due process rights, Defendant Yorty moves for summary judgment. (Mot. at 15–16.)

The Tenth Circuit has "held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004). "If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment."

*Mondragon*, 519 F.3d at 1082.  "If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution."  519 F.3d at 1082.  Section "1983 suits ultimately rest on the Constitution, not on state (or federal) common law."  *Pierce*, 359 F.3d at 1285–88.

The Complaint is devoid of any allegations that Plaintiff DeGarmo was deprived of any due process rights, nor does the Complaint indicate whether any alleged violation involves substantive or due process rights.  Nevertheless, to the extent that Plaintiff DeGarmo is attempting to state a claim under the Due Process Clause of the Fourteenth Amendment, this clause does not provide her with a remedy.  "[N]o § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment."  *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).  *See also Graham v. Connor*, 490 U.S. 386, 388 (1989) (where a plaintiff's rights are protected by a specific provision of the Constitution, such as the Fourth Amendment, then a Fourteenth Amendment claim for substantive due process cannot be brought).  Claims involving arrests and other "seizures" are governed by the Fourth Amendment, which secures the right against unreasonable seizures, and not the Fourteenth Amendment.  *See Albright*, 510 U.S. at 273 ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citation omitted).

Plaintiff DeGarmo has not alleged conduct, and has not provided evidence of conduct, by Defendant Yorty that is prohibited by some constitutional provision other than the Fourth Amendment. The deprivations of which Plaintiff DeGarmo complains are protected under the Fourth Amendment and are thus properly analyzed under the reasonableness standard of the Fourth Amendment, rather than the Fourteenth Amendment. The court has previously found that Defendant Yorty is entitled to summary judgment on Plaintiff's Fourth Amendment claims. Moreover, Plaintiff does not state a claim for procedural due process under the Fourteenth Amendment. *See Becker*, 494 F.3d at 919 ("We find Albright's reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component."). Thus, Defendant Yorty also is entitled to summary judgment on Plaintiff DeGarmo's due process claims.

### E. *Plaintiff DeGarmo's Claims Regarding Alleged Constitutional Violations at Garfield County Jail*

Plaintiff alleges she "was confined six and one half hours at the County Jail and was subjected to degrading treatment and conditions there. Ms. DeGarmo was not offered any food, a proper restroom, un-adequate [sic] shelter, unsanitary apparel, and no medical treatment." (Doc. No. 10 at 14–15.) Plaintiff further alleges she "was not permitted to make a phone call by John Doe 2 . . . to her daughter or for a lawyer or a bondsperson or to a friend or relative to seek assistance." (Doc. No. 10 at 15–16.) Plaintiff alleges this "abusive, outrageous and unconstitutional treatment was administered by the staff of the Garfield County Jail and employees of the Garfield County Sheriff." (*Id.* at 19.) Plaintiff generally alleges these actions

13

constituted "[r]etaliation for exercising her Sixth Amendment right to the assistance of a lawyer" and "cruel and unusual [sic] punishment in violation of the Eighth Amendment to the U.S. Constitution." (*Id..* at 6.)

As stated above, personal participation is an essential element of a § 1983 civil rights action. *Foote*, 118 F.3d at 1423. Here, Plaintiff has failed to allege or to provide any evidence of Defendant Yorty's personal participation in any of the events that occurred at the Garfield County Jail. Therefore, Defendant Yorty is entitled to summary judgment on Plaintiff's claims regarding alleged mistreatment at the Garfield County Jail.

### F. Claims Against Defendant City of Glenwood Springs

A Section 1983 claim against a municipality " 'must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.' " *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998)). This court has determined Defendant Yorty did not commit a constitutional violation and has recommended that Defendant Yorty be granted summary judgment on all of Plaintiffs' constitutional claims. Moreover, upon a review of the Complaint, Plaintiffs have not alleged, and have provided no evidence of, a "municipal policy or custom the execution of which caused [their] injury, a requirement for claims against municipalities" under § 1983 as construed in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). Thus, Defendant City of Glenwood Springs is entitled to summary judgment on all of Plaintiff's Section 1983 claims.

### G.     Federal Criminal Statute Claims

Plaintiffs allege the defendants violated "several federal criminal statutes." (Compl. at 5, 19.) However, none of the federal criminal statutes cited by Plaintiff in her Complaint provide for a private cause of action. *See generally Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (noting that private citizens cannot compel enforcement of criminal law); *see also Blessing v. Freestone*, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."). Thus, the defendants are entitled to summary judgment on Plaintiffs' claims that they violated federal criminal statutes.

### H.     State Law Claims and Supplemental Jurisdiction

Plaintiff asserts Defendant Yorty violated several state laws and statutes. (*See* Doc. No. 10 at 5, 7, 10, 14, 16, 18.) Plaintiff also asserts that Defendant Yorty's alleged actions constituted "outrageous conduct." (*Id.* at 6, 23.) The pretrial dismissal of all federal claims–leaving only state-law claims–"generally prevents a district court from reviewing the merits of the state law claim[s]." *McWilliams v. Jefferson Cnty.*, 463 F.3d 1113, 1117 (10th Cir. 2006); s*ee also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over state-law claims if "the district has dismissed all claims over which it has original jurisdiction"). This is not an inflexible rule, however, and a district court has discretion to adjudicate the merits of the state-law claims when "the values of judicial economy, convenience, fairness, and comity" indicate that retaining jurisdiction over the state-law claims would be appropriate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50

(1988).  Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Cohill*, 484 U.S. at 350 n.7; *see also Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.").

Here, because all of Plaintiffs' federal claims have been eliminated, this court recommends that the District Court decline to exercise jurisdiction over Plaintiffs' state law claims.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that Defendants' "Motion for Summary Judgment Asserting Qualified Immunity" (Doc. No. 27) be GRANTED, that summary judgment be granted in favor of Defendants and against Plaintiffs on the federal claims, and that the District Court decline to exercise jurisdiction over Plaintiffs' state law claims.  This court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Should the court adopt this court's Recommendation, if Plaintiffs file a notice of appeal they also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of May, 2012.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge